## Edmonds v. McCoy, et al,

(Decided June 11, 1926.)

## Appeal from Pike Circuit Court.

Deeds—Plaintiff, Forced by Her Husband to Deed Her House and Lot for Stock of Goods of Defendants, who Acquiesced in Such Duress and Represented that Business was Free of Debt, Held Entitled to have Deed Canceled Where Stock was Thereafter Sold on Execution for Defendants' Debt, and Defendants Immediately Repurchased Stock from Plaintiff in Execution (Bulk Sales Statute [Ky. Stats., Section 2651a-1 et seq.]).—Where plaintiff's husband, by threats and duress, forced her to deed her house and lot for stock of groceries of defendants, who knew of, and acquiesced in, such duress, and represented that business had no outstanding debts, and thereafter, execution was levied on stock for defendants' debt under Bulk Sales Statute (Ky. Stats., section 2651a-1 et seq.), and immediately thereafter defendants repurchased stock from plaintiff in execution by paying debt, held that plaintiff was entitled to judgment setting aside deed.

PICKLESIMER & STEELE for appellant.

W. G. W. RIDDLE for appellee.

OPINION OF THE COURT BY JUDGE DIETZMAN—Reversing.

Alabama Edmonds, the appellant in this action, was the owner of a house and lot in Pike county, which her mother, Nancy Adkins, had given her. Dick Edmonds, her husband, is shown by this record to be a shiftless and rather worthless individual. Will McCoy, one of the appellees herein, is the half-brother of Dick Edmonds and was in the early part of August, 1924, conducting a grocery store located a few miles away from the home of the appellant. He owned the stock of groceries in this store but rented the premises in which the store was run. There is no contradiction in the testimony in this record of the fact that Dick Edmonds, by threats and duress, forced his wife to trade with McCoy her house and lot for this stock of groceries, and we think the evidence satisfactorily shows that McCoy and his wife, his co-appellee herein, were fully cognizant of this duress at the time and acquiesced in it, although they deny it. While appellees say that in the trade, the appellant assumed the debts then existing against the business, the appellant denies this, and the evidence satisfactorily

establishes that the appellees represented to appellant that the business then had no outstanding debts. Appellees also say they transferred to appellant the open accounts of the business. She says she never heard of them nor any mention made of them. The evidence sustains her in this. The appellees did not transfer the lease of the premises in the trade, and although they surrendered to appellant and her husband the possession of that part of the building in which the store was located, they remained in possession of that part where the living quarters were located. The trade was made on August 6, 1924, on which day appellant and her husband executed and delivered to appellees jointly a deed to appellant's house and lot and appellees turned over to appellant and her husband the grocery store. Within eleven days thereafter, during which time what little that was sold out of the store was more than replaced by goods bought by appellant and her husband, the sheriff turned up with an execution against the appellees in which the appellant was joined, evidently because she had bought appellee's stock of goods in bulk, without complying with the "Sales in Bulk" statute, Kentucky Statutes, sections 2651a-1, et seq., because it is conceded that the judgment on which the execution issued was for a debt of appellee McCoy incurred in the conduct of the grocery store. The sheriff levied on the entire stock of goods in the store to satisfy the execution, which he later put up and sold to the plaintiff in that execution, a wholesale house in Bluefield, W. Va. Within fifteen minutes thereafter the appellee, Claudie McCoy, bought the stock of goods back from the plaintiff in the execution for $300.00, and thereupon she and her husband took charge of the store again and have run it ever since. Dick Edmonds then left for West Virginia and, so far as this record shows, has never returned to his wife. The net result of all these transactions is that the appellees have paid the debt they owed to the plaintiff in the execution, they have their store back again, and they also own the appellant's land, while the latter has nothing.

Appellant brought this suit to set aside the deed of August 6, 1924, on the ground that it had been procured from her by fraud and duress, part of which appellees practiced and part of which they were cognizant of and in which they acquiesed. The chancellor dismissed her petition and from that judgment she appeals.

Appellant has, as we have shown above, sustained by the preponderance of the evidence, the claims of her petition. The appellees have in their possession and ownership the store they traded to appellant. It was their duty to pay the debt represented by the execution. So by retaining the store after buying it in by the discharging of their debt which it was their duty, to pay, they are placed *in statu quo ante* the trade. It results that appellant was entitled to the relief she sought and the lower court erred in dismissing her petition. Its judgment is therefore reversed, with instructions to enter a judgment cancelling the deed of August 6, 1924.